IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

T. O.,[1]

        Plaintiff,

v.                                                                       Case No. 19-2726-JWB

KILOLO KIJAKAZI,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 25, 26, 29.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I.    Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity" ("SGA"). *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the

claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id*.; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

## II.   Background and Procedural History

In August 2002, Plaintiff made her original application for disability insurance benefits under Title II of the Social Security Act. (R. at 50.) Plaintiff alleged an onset date of disability of June 4, 2001, when she was 45 years of age. (*Id*.) Plaintiff's claims were administratively denied, both initially and upon reconsideration, prompting her to request a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 19, 2004, and a favorable decision was issued in September 2004.

At step one, the ALJ found Plaintiff had not been engaged in SGA since the alleged onset date. (*Id*. at 52.) At step two, the ALJ found Plaintiff suffered from severe hepatitis C and fibromyalgia. However, at step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id*.) The ALJ next determined that Plaintiff did not retain the RFC to perform competitive work at any exertional level. Because of this, the ALJ concluded that Plaintiff was disabled since June 4, 2001. (Id. at 53.)

Subsequently, beginning in 2013 and continuing until 2017, the Office of the Inspector General ("OIG") investigated allegations that Plaintiff was engaged in breeding dogs and horses

and thereafter hiding her self-employment from the social security administration ("SSA"). (*See generally* R. at 1183-1233.) Among other things, the OIG investigation revealed that Plaintiff had 80 dogs and 11 horses on her property in April 2016. (*Id*. at 1208.) Following this investigation, in 2018, a new ALJ reopened Plaintiff's case "based on fraud and similar fault, due to the extensive evidence of work activity since the alleged onset date." (*Id*. at 27.) The ALJ noted the relevant period for this case began June 4, 2001, and continued through September 16, 2004.

On January 12, 2018, Plaintiff appeared at the first hearing and "requested a continuance to obtain representation, as her representative had recently withdrawn from the case." (*Id*.) The ALJ obliged and the hearing was rescheduled. On April 3, 2018, Plaintiff requested a second continuance to obtain representation. (*Id*.) However, the ALJ noted Plaintiff had almost "three months to obtain representation, and the only indication she provided that she attempted to do so, was a letter indicating that another attorney had contacted a representative, on her behalf, on March 23, 2018." (*Id*.) Due to Plaintiff's lack of effort in obtaining counsel, the ALJ proceeded with the second hearing on April 10, 2018. Despite being unrepresented, Plaintiff testified at the second hearing. On May 29, 2018, the ALJ issued an unfavorable decision. (R. at 39.) Plaintiff exhausted her administrative remedies and has now appealed to this court.

To begin, the ALJ noted that under the SSA's *Hearings, Appeals, and Litigation Manual* ("HALLEX") § I-1-3-25, he was "limited to consideration of only the evidence previously considered that is not disregarded due to fraud or similar fault, as well as any new and material evidence that does not involve fraud and is related to the relevant period." (*Id*. at 27.) At step one, the ALJ found Plaintiff had been engaged in SGA activity from June 4, 2001, through September 16, 2004. (*Id*. at 30.) However, because Plaintiff had "been evasive and inconsistent in her testimony and other reports, and because [the ALJ did] not have access to her tax returns during

the relevant period," the ALJ went on to make alternative findings for steps two through five of the sequential evaluation. (R. at 31.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: hepatitis C, fibromyalgia, hypogammaglobulinemia, allergies, and asthma. (*Id*.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id*. at 32.)

The ALJ next determined that Plaintiff has the RFC to perform light work, as defined in the regulations; she could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could tolerate occasional exposure to extreme cold, extreme heat, and pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; needed to avoid all hazards, including use of moving machinery and exposure to unprotected heights; and should have no interaction with the public. (*Id*. at 33.)

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (*Id*. at 37.) Finally, at step five, the ALJ found that given Plaintiff's age, education, work experience, and the RFC, there were three light work jobs in the national economy in significant numbers that she could perform, including: mail clerk (DOT 209.687-026), router (DOT 222.587-038), and electrical assembler (DOT 729.684-054). (*Id*. at 38-39.) Because of this, the ALJ concluded that Plaintiff was not disabled.

### III.   Analysis

Plaintiff claims the ALJ erred by: (1) failing to develop certain parts of the record; (2) finding that Plaintiff was engaged in SGA from June 4, 2001, through September 16, 2004; and (3) improperly weighing medical opinions when formulating Plaintiff's RFC. The court rejects each of these arguments.

5

### A. Failure to Develop the Record

Plaintiff first argues that the ALJ failed to fully develop the record regarding Plaintiff's 2001-2004 tax returns and testimony from both Plaintiff and Dr. Selbert Chernoff at the previous hearing on August 19, 2004. (Doc. 25 at 14.) Because of this failure, Plaintiff asserts this court is precluded from determining whether the ALJ's decision is supported by substantial evidence. Instead of addressing this issue as a failure to develop the record, Defendant simply argues that other substantial evidence supports the ALJ's step one findings; and regardless, any error the ALJ may have made at step one is harmless because he "went on to make alternate findings at step two through five of the sequential evaluation process." (Doc. 26 at 4.) The court agrees.

Here, the court recognizes that despite Plaintiff's present concerns about her missing tax records, she had no issue with them missing when an ALJ determined she was disabled in 2004. (*See generally* R. at 50-53.) Furthermore, a review of the record reveals that Plaintiff had previously agreed to provide her tax records to assist with determining her disability benefits, but never did so. (R. at 1188.) This is particularly troubling when combined with the fact that Plaintiff provided no case law for her argument that the missing tax records "precludes this [c]ourt's ability to determine if the ALJ's decision is supported by substantial evidence." (Doc. 25 at 14.) The ALJ did not rely on the missing tax records to impute SGA upon Plaintiff at step one; and Plaintiff fails to illustrate how this precludes the court from reviewing the evidence the ALJ actually relied upon in arriving at his decision.

Likewise, Plaintiff's contention concerning testimony from the 2004 hearing fails. While the ALJ did not have the hearing transcript, he did have the previous ALJ's written decision that set out the pertinent pieces of information that were gleaned from the testimonies of Plaintiff and

Dr. Chernoff.[2]  After reviewing the previous decision, the ALJ noted that Plaintiff's current testimony concerning her symptoms mirrored that of her prior statements.  (R. at 34.)  However, the ALJ found that Plaintiff's testimony concerning her work activity during the relevant period warranted "little weight, as there is significant evidence that, during the relevant period, the [Plaintiff] was engaged in self-employment" via her breeding business.  (R. at 30.)  In the same vein, the ALJ "disregarded Dr. Chernoff's testimony, as it was obtained via fraud or similar fault."  (R. at 37.)  Specifically, "Dr. Chernoff did not know when he testified that the [Plaintiff] was spending some time (between 10-20 hours a week, maybe 60 hours a month) working as a dog breeder, as the [Plaintiff] had repeatedly denied working since the alleged onset date."  (*Id*.)  The court agrees and rejects Plaintiff's nonsensical argument that Dr. Chernoff could have known Plaintiff was in the breeding business when he testified in 2004.  Plaintiff's argument ignores the reality that the present ALJ was able to discard evidence he found to be obtained through fraud or similar fault, which was the case here.  Accordingly, the court finds no error by the ALJ that precludes this court from continuing its analysis.

      B.      **Step One SGA Finding**

Plaintiff next argues that the ALJ's step one finding is not supported by substantial evidence.  Specifically, Plaintiff asserts the ALJ erred in finding that Plaintiff had solely signed the articles of incorporation for her breeding business; and finding Plaintiff's claim that her former husband did 90 to 97% of the breeding business work inconsistent with the record.  (Doc. 25 at 16-18.)  Defendant responds by conceding the fact that the articles of incorporation were "actually signed by both [Plaintiff] and her husband."  (Doc. 26 at 5.)  However, Defendant argues that the other evidence relied upon by the ALJ illustrated "that Plaintiff's involvement in her breeding

---

[2] Dr. Chernoff, via telephone, "testified based on his review of the entire medical record."  (R. at 51.)

business during the relevant time period constituted SGA;" and, even if the ALJ erred in any way at step one, "the ALJ went on to make alternate findings at steps two through five of the sequential evaluation process." (*Id*.)  On review, the court agrees with Defendant.

Here, Plaintiff's arguments seem more akin to splitting hairs than an illustration of how the record as a whole is lacking.  For example, to support his conclusion that Plaintiff was engaged in SGA, the ALJ cited to: (1) veterinary forms that only contain Plaintiff's signature; (2) testimonials from customers dated between 2000 and 2001; (3) hundreds of pages of business records cataloging sales and expenses from 2000 to 2007; and (4) "a printout from the [Plaintiff's breeding] website, from May 10, 2013, indicat[ing] that she has been a reputable breeder for 'over ten years now.'" (R. at 30.)  Plaintiff does not spend her time explaining how each of these somehow work in her favor.  Instead, Plaintiff attempts to isolate one factual error by the ALJ in hopes that the court will find it outweighs the remaining substantial evidence.

Similarly, Plaintiff disputes the ALJ's finding that there was an inconsistency between the record and Plaintiff's claims that her husband did nearly all of the breeding business work.  The ALJ noted "that all of the correspondence and all of the veterinary information lists" Plaintiff, not her husband. (R. at 31.)  Further, the ALJ cited to the fact that Plaintiff previously admitted that the breeding business "required her to spend up to 20 hours a week." (*Id*.)  While Plaintiff boldly asserts it is possible that working 20 hours a week could account for less than 10% of the work necessary to operate a breeding business, that would mean that her husband worked almost 26 hours per day, seven days per week, to cover the other 180 hours of weekly work required under her theory.  But there are only 24 hours in a day, and everyone needs to sleep, so it is quite clear that Plaintiff's theory is utterly impossible.  The court finds no reversible error by the ALJ at this stage.

Moreover, Plaintiff's arguments ignore the reality that the ALJ did not deny her claim at step one. The ALJ recognized the fact that he did not have Plaintiff's tax returns for 2001-2004, and that Plaintiff had been evasive and inconsistent with her testimony. With this in mind, the ALJ continued analyzing Plaintiff's claim at steps two through five of the sequential evaluation. Accordingly, even if the ALJ erred at step one, it did not constitute reversible error. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (applying harmless error to social security cases when the ALJ continued with the sequential evaluation process and the record supports the ALJ's findings at subsequent steps).

### C.  Weighing Medical Opinions

As a final matter, Plaintiff voices concerns with the ALJ's weighing of the medical source opinions. First, Plaintiff claims the ALJ erred in his RFC determination by relying on the state agency consultants' opinions because they did not address or consider Plaintiff's "severe" impairments of allergies and asthma. (Doc. 25 at 18.) Second, Plaintiff asserts that the "ALJ has simply not given a legitimate reason for rejecting" the opinion of Plaintiff's treating physician. (Doc. 29 at 7.) And lastly, Plaintiff argues the ALJ erred by not addressing her "risk of infection from co-workers and supervisors." (Doc. 25 at 21.) However, the ALJ's RFC finding is supported by substantial evidence and adequately accounts for Plaintiff's impairments to the extent that the record supported them.

Plaintiff's first argument centers around two opinions by state agency physicians—Dr. Yong Kim and Dr. J.F. Legler. Both Dr. Kim and Dr. Legler received Plaintiff's medical records and recounted the same in their summary of the evidence. (R. at 1142-43, 1152-53.) Dr. Kim noted Plaintiff's allegations of extreme fatigue, body aches, joint pain, and diarrhea, but commented that the severity of her symptoms was only partially credible due to treatment notes

and her reported daily activities.  (*Id*. at 1143.)  He opined that Plaintiff was capable of an RFC equivalent to a full range of light work.  (*Id*. at 1134-43.)  On reconsideration, Dr. Legler agreed with Dr. Kim's light RFC assessment.  After extensively discussing the medical records, the ALJ reviewed the opinions.  In according "great weight" to the opinions of Dr. Kim and Dr. Legler, the ALJ found that both were consistent with the "evidence of record, including the clinical signs and findings, the [Plaintiff's] activities of daily living, and the [Plaintiff's] ability to participate in a dog and horse breeding business during the relevant period."  (*Id*. at 36.)  Despite this, the ALJ found additional postural and environmental limitations to account for Plaintiff's "history of asthma/allergies."  (*Id*.)

Now, Plaintiff argues that because neither Dr. Kim nor Dr. Legler accounted for Plaintiff's limitations resulting from her asthma and allergies, the ALJ erred by relying on them.  Essentially, Plaintiff takes the position that the opinions must match any purported limitation to the severe impairment causing it.  Plaintiff, however, does not cite any authority that requires a medical source to match the limitations to the severe impairments.  *See Davidson v. Berryhill*, No. CV 17-2139-JWL, 2018 WL 1412064, at *12 (D. Kan. Mar. 20, 2018).  Moreover, Plaintiff's argument ignores that both physicians were instructed to base their "conclusions on all evidence in file" (R. at 1134, 1153), and that both, as state agency medical consultants, "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1).  Plaintiff has failed to point to any evidence to support a finding that these agency physicians failed to consider all of her impairments or that the RFC for a reduced range of light work assessed by the ALJ does not provide sufficient limitations to accommodate Plaintiff's asthma and allergies.  Instead, Plaintiff assumes that the agency physicians should have mentioned allergies and asthma, and such impairments would require additional limitations than those assessed.  This approach would

require the court to reweigh the evidence and find greater limitations than those assessed by the ALJ. This court cannot reweigh the evidence. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Next, Plaintiff argues that the ALJ erred in assigning "little" weight to Dr. Robert Nottingham's opinions. Generally, an ALJ should "give more weight to opinions from [Plaintiff's] treating sources." 20 C.F.R. § 404.1527(c)(2). In evaluating a treating physician's opinion, the ALJ is to conduct a two-step process. At the first step, the ALJ must determine if the opinion is entitled to "controlling weight." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2). "If the ALJ finds that the opinion is lacking in either respect, it is not entitled to controlling weight." *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006). At the second step, if the opinion is not entitled to controlling weight, the ALJ is to give good reasons for the weight given after considering certain factors. *Krauser*, 638 F.3d at 1330-31. These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (quotation omitted). In applying these factors, the ALJ must provide specific and legitimate reasons for rejecting the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). A finding that an opinion is unsupported by the evidence or is inconsistent with the record

constitutes good cause. *See Arterberry v. Berryhill*, 743 F. App'x 227, 229 (10th Cir. 2018); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987); 20 C.F.R. § 404.1527(c)(3), (4).

Here, the ALJ assigned little weight to Dr. Nottingham's opinions after finding that his opinions were "not well supported by the medical evidence of record." (R. at 36.) The ALJ went on to explain that despite Dr. Nottingham's extreme conclusion that Plaintiff could not even perform sedentary level work, his treatment notes painted a different picture; that is, Dr. Nottingham consistently found that Plaintiff "was doing fairly well and her physical examinations were basically unremarkable . . ." (*Id*. at 36-37.) For example, on January 27, 2004, Dr. Nottingham stated he "did a quick physical on [Plaintiff and] everything looks okay beside the generalized fatigue . . . She is doing fairly well." (*Id*. at 1167). This was not a one-time occurrence either. (*See id*. at 1174, 1178.) With respect to Dr. Nottingham's conclusion that Plaintiff would miss more than four days of work per month (*Id*. at 1158), the ALJ found nothing in the record indicating emergent treatments or hospitalizations. Instead, Plaintiff has been "doing quite well" according to her treatment notes. (*Id*. at 1125.)

Moreover, the ALJ correctly noted that Dr. Nottingham's RFC conclusions (*Id*. at 1155-58) were "presented in a checkbox format without narrative discussion of the basis for each limitation." As a final matter, the ALJ correctly explained that "Dr. Nottingham's conclusion that the claimant was disabled is directly related to the ultimate issue of whether the [Plaintiff] was disabled under the act, which is reserved" to the ALJ. (*Id*. at 37); *see also* 20 C.F.R. § 404.1527(e). Again, this court cannot reweigh the evidence. *Bowman*, 511 F.3d at 1272. Rather, it must review the sufficiency of the evidence and cannot "displace the agency's choice between two fairly conflicting views." *Oldham*, 509 F.3d at 1258. The court finds that the ALJ properly weighed Dr. Nottingham's opinion and sufficiently explained his reasons for assigning the opinion little weight.

12

Lastly, Plaintiff argues that the ALJ's RFC should have included a limitation for her to not work around co-workers and supervisors due to her risk of infection. However, Plaintiff fails to cite to any evidence in the record that would show that such a limitation is necessary. *See Fulton v. Colvin*, 631 F. App'x 498, 506 (10th Cir. 2015). "Indeed, even Dr. Nottingham—on whose opinion Plaintiff relies—did not indicate in his opinion that Plaintiff could not work around other people." (Doc. 26 at 11.) Therefore, the court rejects Plaintiff's contention that the ALJ erred in not including more limitations in the RFC.

This court must affirm an ALJ's decision if substantial evidence supports that decision. *See Tarpley*, 601 F. App'x. at 643. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* That much exists in this case.

## IV. Conclusion

The Commissioner's decision is AFFIRMED. The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED this 31st day of March, 2022.

\_\_s/ John Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE